UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY L. ROBINSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GOVERNOR JERRY BROWN et al.,<br><br>　　　　Defendants. | No.  2:12-cv-1776 MCE DAD P<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983.  This matter is before the court on a motion to dismiss brought on behalf of defendants Elia and Goeke.  Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

Plaintiff is proceeding on his original complaint against defendants Elia and Goeke. Therein, he alleges that he is a member of the House of Yahweh faith, and when he asked defendants Elia and Goeke for access to the chapel at California State Prison, Sacramento ("CSP-Sacramento") in 2009, they refused him such access.  (Compl. at 1-12 & Exs.)  At screening, the court determined that plaintiff's complaint appeared to state cognizable claims for relief against the defendants under the First Amendment, Fourteenth Amendment Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (Doc. No. 13)

1

**LEGAL STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

A defendant may bring a motion to dismiss under Rule 12(b)(6) based on the doctrines of res judicata or collateral estoppel when the defense does not raise any disputed issues of fact. See Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).

**ANALYSIS**

In the pending motion to dismiss, defense counsel argues that the court should dismiss plaintiff's complaint because his claims concerning defendants' alleged denial of his requests for chapel access at CSP-Sacramento are barred by the doctrines of res judicata and collateral estoppel. Alternatively, defense counsel argues that plaintiff's claim for injunctive relief is barred by the statute of limitations and that plaintiff is not allowed to seek monetary relief under RLUIPA because defendants are immune. (Defs.' Mot. to Dismiss at 4-11.) Upon consideration of the parties' arguments, and for the reasons stated herein, the court agrees that this action is barred by the doctrines of res judicata and collateral estoppel.

I. Plaintiff's Prior Cause of Action

On March 29, 2002, plaintiff filed a complaint in the United States District Court for the Northern District of California in which he claimed that defendant Matthew Cate, the Secretary of the California Department of Corrections and Rehabilitation, violated his rights under the First Amendment, Fourteenth Amendment Equal Protection Clause, and RLUIPA by denying him access to the prison chapel at Salinas Valley State Prison. See Robinson v. Delgado, 2-cv-01538 NJV (N.D. Cal.) ("Robinson I"). More than eight years later, on May 19, 2010, after a jury trial, the court entered judgment against plaintiff and for defendant Cate. (Defs.' Mot. to Dismiss, Exs. A-B & D.)

Although plaintiff's complaint in Robinson I concerned conditions of confinement at Salinas Valley State Prison, the record before the court demonstrates that plaintiff's counsel raised plaintiff's complaint about chapel access at CSP-Sacramento during the trial in Robinson I. At the beginning of trial of that case, the court instructed the jury that plaintiff was alleging that Matthew Cate "violated the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act by denying [plaintiff] . . . access to the prison chapel or other accommodations for group worship on the Sabbath or Saturday . . . ." (Defs.' Mot. to Dismiss, Ex. D.) Plaintiff's counsel then gave an opening statement in which he explained that while most of the events in dispute occurred at Salinas Valley State Prison, the religious violations at issue had continued to take place at CSP-Sacramento. (Id.) In this regard,

3

1  plaintiff's counsel made clear that since plaintiff's incarceration at CSP-Sacramento, he had not
2  received access to a place of worship with other House of Yahweh inmates. (Id.)
3      In addition, testimony introduced in Robinson I addressed whether inmates who identified
4  themselves as associated with House of Yahweh faith were provided access to the prison chapel
5  at CSP-Sacramento. (Defs.' Mot. to Dismiss, Ex. D.) For example, on direct examination
6  plaintiff testified that he was not able to meet with House of Yahweh inmates at CSP-Sacramento
7  and that he had filed an inmate appeal and requested access to the chapel at CSP-Sacramento, but
8  that prison officials denied his request. (Id.)
9      Plaintiff's counsel also gave a closing argument in Robinson I in which he explained that
10 since plaintiff's transfer to "CSP Sacramento in June of 2009, he has had no access at all to the
11 chapel." (Defs.' Mot. to Dismiss, Ex. D.) Plaintiff's counsel argued to the jury that, "[w]hile
12 every other faith group, faith groups, including Jehovah Witnesses and Seventh Day Adventists
13 and Christians and Buddhists and Muslims and Native Americans and Satan Worshipers have
14 gotten chapel access, and Mr. Robinson and his House of Yahweh group cannot." (Id.)
15 Meanwhile, counsel for defendants argued in closing in Robinson I that

> if you find that the state must provide Saturday chapel and chapel on feast days for Mr. Robinson, it's an impermissible intrusion on matters of prison and public safety and disregards the discretion of prison officials in matters of prison security. It also ignores the rights of other inmates who have equal access requests and have priority in the prison chapel . . . .

20 (Id.)
21      As it deliberated in Robinson I, the jury submitted questions to the court to clarify whether
22 plaintiff's case before them included his claims for chapel access at CSP-Sacramento. (Defs.'
23 Mot. to Dismiss, Ex. D.) Specifically, the jury asked "Was there any evidence presented as to
24 whether plaintiff has been denied access for group worship in Sacramento?" (Id.) After
25 discussion, the parties in Robinson I stipulated that evidence was presented that plaintiff was
26 denied access to group worship in Sacramento. (Id.) Additionally, the jury asked the court "In
27 regards to . . . chapel access claims, what is the time frame we should be considering: (a) Salinas
28 Valley only. Or, Salinas Valley, to present, (Sacramento)?" (Id.) Defense counsel objected that

plaintiff's claims regarding CSP-Sacramento should not be considered by the jury for various reasons including issues relating to jurisdiction and exhaustion of administrative remedies. (Id.) Plaintiff's counsel, however, argued that claims regarding chapel access at CSP-Sacramento should be considered by the jury because one of the named defendants in the action at trial was the Secretary of the California Department of Corrections and Rehabilitation, and the case involved decisions made by the Secretary that affected plaintiff to that very date. (Id.) The trial court explained that the verdict form was in the present tense and answered the jury's question by explaining to them that "you may consider all of the evidence presented at trial." The trial court noted on the record that after reviewing the stipulation of facts, the court believed that CSP-Sacramento had been brought into the "overall case." (Id.)

The jury returned a verdict in favor of defendant Cate as to "the claims for group worship and access to the prison chapel on Plaintiff's Sabbath and religious feast days under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act." (Defs.' Mot. to Dismiss, Exs. B & C.) The jury specifically found that the California Department of Corrections and Rehabilitation's "refusal to provide plaintiff with chapel access or other accommodation for group worship on the Sabbath and feast days [wa]s reasonably related to one or more legitimate penological interests and was justified by a compelling government interest." (Id., Ex. C.)

II. Res Judicata (Claim Preclusion)

The court now turns to defendants' argument that plaintiff's claims in this action are barred by the doctrine of res judicata. Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). The doctrine also "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action." C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987) (internal quotations omitted). To determine the preclusive effect of a prior federal lawsuit, the court must look to federal law. See Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 n.10 (9th Cir. 2003). Under federal law, a court should apply res

judicata whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties." Turtle Island Restoration Network v. United States Dep't of State, 673 F.3d 914, 917 (9th Cir. 2012) (quoting Tahoe-Sierra Pres. Council, 322 F.3d at 1077) (citation and internal quotation marks omitted). See also United States v. Liquidators of European Fed. Credit Bank, 630 F.3d 1139, 1150 (9th Cir. 2011) ("Liquidators").

First, the undersigned finds that there is an "identity of claims" between plaintiff's claims presented in his prior case, Robinson I, and his claims in this action. The Ninth Circuit looks to four criteria to determine whether there is identity of claims between two causes of action:

> (1) whether the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

Turtle Island Restoration Network, 673 F.3d at 917-18 (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)) (citation omitted). The last of these factors is the most important. Id. at 918; see also Liquidators, 603 F.3d at 1151 ("the inquiry about the 'same transactional nucleus of facts' *is the same inquiry as* whether the claim could have been brought in the previous action.") (emphasis in original).

Generally speaking, a claim that arises after plaintiff filed his complaint in a prior proceeding is not barred by res judicata based on the prior proceeding. See Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955) ("While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."); Los Angeles Branch NAACP v. Los Angeles Unified School District, 750 F.2d 731, 739 (9th Cir. 1985) (en banc). However, where, as here, the parties actually litigated the claims that arose from events that occurred after plaintiff filed his complaint in the prior proceeding, res judicata bars those claims. Los Angeles Branch NAACP, 750 F.2d at 740 ("If the Crawford plaintiffs had actually litigated the liability of the District for segregative acts occurring after May 2, 1969, then the res judicata bar would have to expand to encompass those events and others that might have

1    been litigated with them."). A recent district court decision addressing circumstances similar to
2    those at issue here is instructive in this regard. See Ashker v. Cate, No. C 09-2948 CW, 2012 WL
3    1094436 (N.D. Cal. Mar. 30, 2012) ("Ashker II").

4         In Ashker II, a prisoner-plaintiff brought an Eighth Amendment deliberate indifference
5    claim against the defendant Dr. Sayre. See Ashker II, No. C 09-2948 CW, 2012 WL 1094436 at
6    *1 (N.D. Cal. Mar. 30, 2012). In that action the plaintiff claimed that defendant Dr. Sayre refused
7    to properly treat his serious medical needs in connection with an old gunshot wound that caused
8    permanent injuries to his right forearm, wrist, hands, and fingers, and caused him ongoing pain.
9    See id. The plaintiff had previously filed several lawsuits against the defendant and other prison
10   officials regarding their medical treatment of his injuries. See id. In the most recent prior
11   lawsuit, Ashker v. Sayre, C 05-3579 CW ("Ashker I"), the jury had returned a verdict in favor of
12   plaintiff and against defendant Dr. Sayre on plaintiff's claims that the defendant knowingly
13   disregarded his serious medical needs and was negligent when he treated plaintiff. See Ashker II,
14   No. C 09-2948 CW, 2012 WL 1094436 at *1. In light of the jury verdict in Ashker I, the
15   defendants moved to dismiss the complaint in Ashker II as barred by the doctrine of res judicata.
16   See id. at *4. In opposition, plaintiff argued that there was no identity of claims between his two
17   civil actions because the events he complained of in Ashker II occurred after the June 18, 2007
18   filing of his supplemental complaint in Ashker I. See id.

19        The district court determined that there was an identity of claims between Ashker I and
20   Ashker II and ultimately concluded that the doctrine of res judicata barred the plaintiff's claims
21   against defendant Dr. Sayre because the parties had already litigated those claims in Ashker I.
22   See Ashker II, No. C 09-2948 CW, 2012 WL 1094436 at *5-*6. Specifically, the court found
23   that near the end of plaintiff's trial in Ashker I, on May 12, 2009, plaintiff testified about his
24   ongoing pain and discomfort, the medications he had recently been taking, and various doctor
25   visits that had taken place in 2009. See id. at *5. The trial court determined that such trial
26   testimony placed at issue plaintiff's medical condition and defendant Dr. Sayre's conduct up to
27   the date of trial in Ashker I. See id. at *6. In addition, the court observed that the instruction on
28   compensatory damages told the jury to consider plaintiff's "loss of enjoyment of life experience

7

1    and which with reasonable probability will be experienced in the future," as well as plaintiff's
2    "physical pain and suffering experienced and which with reasonable probability will be
3    experienced in the future." Id. The trial court did not instruct the jury to limit its consideration of
4    evidence to events which occurred before June 2007, and as a result the jury was allowed to
5    consider evidence of plaintiff's condition through May 12, 2009, the date plaintiff testified at
6    trial, and considered plaintiff's future physical pain and suffering and loss of enjoyment of life as
7    damages beyond that date. See id. at *6. Based on these circumstances, the court ultimately
8    granted defendants' motion to dismiss plaintiff's claims in Ashker II against defendant Dr. Sayre
9    as barred by the doctrine of res judicata. See id.

10           The undersigned finds that the circumstances here are virtually indistinguishable from
11   those presented in Ashker II. The court acknowledges, as plaintiff argues in his opposition, that
12   plaintiff filed his original complaint in Robinson I in 2002 and complained therein about
13   conditions of his confinement at Salinas Valley State Prison. (Pl.'s Opp'n to Defs.' Mot. to
14   Dismiss at 2.) Plaintiff did not file his complaint in this action until 2012 and complained therein
15   about conditions of confinement at CSP-Sacramento. (Id.) The record before this court
16   demonstrates, however, that plaintiff actually litigated his claim regarding the alleged lack of
17   chapel access at CSP-Sacramento during his trial in Robinson I. As discussed above, plaintiff's
18   counsel presented the factual basis of that claim to the jury in Robinson I, plaintiff testified about
19   such a claim in that trial, and the jury considered and decided the merits of the claim regarding
20   the alleged lack of chapel access at CSP-Sacramento in Robinson I.

21           In this regard, the undersigned finds that the four factors necessary to establish an identity
22   of claims for purposes of res judicata are satisfied. Specifically, the judgment in Robinson I
23   would be destroyed or impaired if this court allowed plaintiff to prosecute this action. In
24   addition, if this case were to go to trial, the parties would put on substantially the same evidence
25   as was presented in Robinson I. Plaintiff would surely testify, as he did in Robinson I, that he
26   asked for access to the chapel at CSP-Sacramento, filed an inmate appeal concerning such access,
27   but that prison officials denied it, and defendants would certainly introduce testimony as to the
28   penological reasons for restricting chapel access. (Defs.' Mot. to Dismiss, Ex. D at 248.) Indeed,

plaintiff's constitutional claims in this action are identical to the claims he advanced in his prior action. Finally, for the reasons discussed above, both the claim in this action and that presented in Robinson I arise out of the same transactional nucleus of facts. See Int'l Union of Operating Engineers-Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr, 994 F.2d 1426, 1429 (9th Cir. 1993) ("Whether two events arise from the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together."); Tahoe-Sierra Pres. Council, 322 F.3d at 1078 ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action."). Accordingly, the undersigned finds that there is an "identity of claims" between Robinson I and this action.

Turning now to the second element of res judicata, which requires a final judgment on the merits in the prior proceeding, the court finds that plaintiff obtained a final judgment on the merits in Robinson I in the form of a jury verdict and judgment, albeit one rendered in favor of defendant Cate. (Defs.' Mot. to Dismiss, Ex. A.) To be sure, plaintiff has appealed that judgment, and that appeal is currently pending before the Ninth Circuit Court of Appeals. In federal courts, however, a district court judgment is final for purposes of res judicata. See Sosa v. DIRECTV, 437 F.3d 923, 928 (9th Cir. 2006); Eichman v. Fotomat Corp., 759 F.2d 1434, 1439 (9th Cir. 1985) ("The federal rule on the preclusive effect of a judgment from which an appeal has been taken is that the pendency of an appeal does not suspend the operation of an otherwise final judgment for purposes of res judicata.").

Finally, as to the third element of res judicata, whether there is privity between the parties, the court finds that there is privity between the defendants in Robinson I and the defendants named in this action insofar as plaintiff has sued defendants in this case in their official capacity. Specifically, privity exists if "there is substantial identity between the parties, that is, when there is sufficient commonality of interest." Tahoe-Sierra Pres. Council, 322 F.3d at 1082 (internal quotation marks omitted) (citing United States v. ITT Raynier, 627 F.2d 996, 1003 (9th Cir. 1980) ("[A] 'privy' may include those whose interests are represented by one with authority to do so.")). In addition, "there is privity between officers of the same government." Fund for Animals

9

1  v. Lujan, 962 F.2d 1391, 1398 (9th Cir. 1992) ("[A] judgment in a suit between a party and a
2  representative of the United States is res judicata in relitigation of the same issue between that
3  party and another officer of the government.").

4        There is not privity, however, where the parties in the two suits have not been sued in the
5  same capacity because a defendant in his official capacity does not represent the same legal right
6  as he does in an individual capacity. See Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000);
7  Escamilla v. Giurbino, No. 07-CV-0353 W(POR), 2008 WL 4493035 at *5 (S.D. Cal. 2008)
8  (denying defendants' motion to dismiss the prisoner-plaintiff's claims against defendants in their
9  individual capacities on grounds that the privity element is not satisfied when plaintiff sued a
10 defendant in his official capacity in his prior action). See generally Restatement (Second) of
11 Judgments, § 36(2) (Mar. 2014) ("A party appearing in an action in one capacity, individual or
12 representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a
13 subsequent action in which he appears in another capacity.").

14       In Robinson I, plaintiff sued Matthew Cate, the Secretary of the California Department of
15 Corrections and Rehabilitation, in his official capacity. Here, plaintiff has sued defendant Elia,
16 the Community Resource Manager at CSP-Sacramento/CDCR, and defendant Goeke, a Catholic
17 chaplain at CSP-Sacramento, in their official and individual capacities. (Compl. at 3.) Insofar as
18 plaintiff has sued the defendants in their official capacity, privity exists because he is seeking
19 relief from the same state agency involved in Robinson I. Insofar as plaintiff has sued the
20 defendants in their individual capacity, however, privity is not satisfied because Robinson I only
21 involved Matthew Cate in his official capacity.

22       In sum, the doctrine of res judicata bars relitigation of plaintiff's claims against defendants
23 Elia and Goeke in their official capacity because there is an identity of claims between plaintiff's
24 two causes of action, there was a final judgment on the merits in Robinson I, and privity exists
25 between defendant Cate and defendants Elia and Goeke. The doctrine of res judicata does not,
26 however, bar plaintiff's claims against defendants in their individual capacity because there is no
27 privity under these circumstances between defendant Cate and defendants Elia and Goeke.
28 /////

III. Collateral Estoppel (Issue Preclusion)

The court will now address defendants' argument that plaintiff's claims are barred by the doctrine of collateral estoppel. Under the doctrine of collateral estoppel, parties are not allowed to relitigate issues of law and issues of fact if they were conclusively determined in a prior action. See United States v. Stauffer Chem. Co., 464 U.S. 165, 170-71 (1984). The purpose of the collateral estoppel doctrine is "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate." Montana, 440 U.S. at 153-54. "Federal law governs the collateral estoppel effect of a case decided by a federal court." Trevino v. Gates, 99 F.3d 911, 923 (9th Cir. 1996). A district court's decision is final for purposes of the doctrine of collateral estoppel, notwithstanding the availability of an appeal. See Hawkins v. Risley, 984 F.2d 321, 324 (9th Cir. 1993).

A case must meet three requirements before a court may apply the doctrine of collateral estoppel to it:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

See McQuillion v. Schwarzenegger, 369 F.3d 1091, 1096 (9th Cir. 2004).

First, the court finds that the issues in this action and those presented in Robinson I and to be identical. The Ninth Circuit considers four factors as articulated by the Restatement (Second) of Judgments to determine whether the issue in a second proceeding is identical to an issue litigated in a prior proceeding:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
>
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
>
> (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

1                     (4) how closely related are the claims involved in the two proceedings?

See Kamilche Co. v. United States, 53 F.3d 1059, 1062 (9th Cir. 1995).

      Here, substantial overlap exists between plaintiff's evidence and argument in his two actions. In this action, plaintiff alleges in his complaint that he was not able to meet with House of Yahweh inmates at CSP-Sacramento, that he had filed an inmate appeal and requested access to the chapel at CSP-Sacramento, but prison officials denied his request. (Compl. at 4-7.) In Robinson I, plaintiff testified to these very same facts at trial. (Defs.' Mot. to Dismiss, Ex. D at 248.) Of course, plaintiff alleges his claims in this action against different defendants than those named in Robinson I, but the Supreme Court has long recognized that "collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries." Parklane v. Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979). See generally Restatement (Second) of Judgments § 29 (Mar. 2014) ("A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action . . . ."). In addition, both this action and Robinson I involve the application of the same constitutional provisions and statutes – the First Amendment, Equal Protection Clause of the Fourteenth Amendment, and RLUIPA. Moreover, although plaintiff may not have conducted discovery related to the specific conduct of defendants Elia and Goeke at CSP-Sacramento in Robinson I, he had sued Matthew Cate in his official capacity as the Secretary of the California Department of Corrections and Rehabilitation in that prior action. In this regard, pretrial preparation and discovery in Robinson I could reasonably be expected to have embraced the same issues presented here, particularly prison policies and procedures as they relate to inmates gaining access to prison chapels. Finally, plaintiff's claims in this action and in Robinson I are closely related, if not identical, because they concern plaintiff's access to the chapel at CSP-Sacramento. It is the case that plaintiff requests an additional form of relief in this action (i.e., he seeks damages in addition to injunctive relief). Nonetheless, the inquiry for purposes of collateral estoppel is whether the issue presented, and not the requested relief, is identical. See Corrigan v. United States, 82 Fed. Cl. 301 (Fed. Cl. 2008) ("Even if the

requested relief in the second suit differs from that in the first suit, collateral estoppel applies ….") Accordingly, the undersigned finds that the issues raised in this action and those raised in Robinson I are identical for purposes of collateral estoppel.

Turning now to the second requirement of collateral estoppel, whether plaintiff actually litigated the issue he complains of in the second proceeding, the court finds that plaintiff "actually litigated" his claims relating to his chapel access at CSP-Sacramento in Robinson I. See Kremer v. Chemical Const. Corp., 465 U.S. 461 (1982) (full and fair opportunity to litigate is met when prior proceedings complied with the minimum due process requirements of the Fourteenth Amendment). See generally Restatement (Second) of Judgments § 27 (Mar. 2014) (a party has actually litigated an issue when the parties properly raise the issue, the issue is submitted for determination, and the issue is actually determined). The Ninth Circuit has explained that in order to determine whether a party had a "full and fair" opportunity to litigate an issue, a court should make a practical judgment based on two considerations:

> First, the court must compare the procedures in the prior and subsequent actions. If 'procedural opportunities unavailable in the first action . . . could readily cause a different result' in the second action, then the results of the first action generally should not be given preclusive effect. Second, the court must consider the parties' incentives to litigate in the two actions. If a party had good reason not to contest an issue vigorously during the first action and did not, in fact, vigorously contest the issue, that party generally should be entitled to relitigate the issue during the second action.

Maciel v. Comm'r of Internal Revenue, 489 F.3d 1018, 1023 (9th Cir. 2007).

Here, the procedural opportunities in this action are same opportunities that were available to plaintiff in Robinson I. Both cases are civil proceedings (as opposed to a criminal proceeding and subsequent civil proceeding) in federal court (as opposed to state court and a subsequent proceeding in federal court), and there is no reason to doubt the quality or fairness of the procedures employed by the U.S. District Court for the Northern District of California in Robinson I. That is especially true here since plaintiff was represented by counsel at trial in his prior civil action. Moreover, plaintiff had incentive to vigorously litigate his claim concerning conditions of confinement at CSP-Sacramento related to chapel access in Robinson I and he did so. In Robinson I, plaintiff sued Matthew Cate in his official capacity as the Secretary of the

1  California Department of Corrections and Rehabilitation and sought prospective injunctive relief.
2  In this regard, this is not a case where there was an insignificant amount at stake in plaintiff's first
3  action.  See generally 47 Am. Jur. 2d Judgments § 575 (Feb. 2014) (factors courts have
4  considered to determine whether a party had a full and fair opportunity to litigate an issue in a
5  prior action include, "the size of the claim; the extent of the litigation and the party's participation
6  in it; the competence of counsel; the availability of new evidence; the ability of the party against
7  whom collateral estoppel is being asserted to defend or prosecute the prior action, including any
8  inconvenience due to forum or location; and whether the party to be estopped without fault of his
9  own was deprived of crucial evidence or witnesses in the prior action").  Nor has plaintiff made
10  any showing or presented any argument here suggesting that he did not have a full and fair
11  opportunity to litigate the issues he seeks to present in this action in Robinson I.

12      Finally, turning to the third requirement for collateral estoppel, whether the issue here was
13  a critical and necessary part of the jury's determination in Robinson I, the undersigned finds that
14  it was.  This third requirement is met when the judgment depends on a given determination and
15  when "the final outcome hinges on it."  Bobby v. Bies, 556 U.S. 825, 834-45 (2009).  As
16  discussed above, the jury in Robinson I submitted multiple questions to the trial court during their
17  deliberations to clarify whether they should consider plaintiff's claims regarding chapel access at
18  CSP-Sacramento.  The court answered the jury's questions affirmatively.  Indeed, the jury's
19  verdict hinged on its finding that the state's refusal to provide plaintiff with chapel access or other
20  accommodation for group worship on the Sabbath and feast days was reasonably related to one or
21  more legitimate penological interests and was justified by a compelling government interest.
22  (Defs.' Mot. to Dismiss, Ex. C.)

23      In short, the court finds that this case meets all three requirements for application of the
24  doctrine of collateral estoppel.  As such, plaintiff should be collaterally estopped from litigating
25  in this subsequent civil action the issues of whether he was denied chapel access at CSP-
26  /////
27  /////
28  /////

Sacramento in violation of the First Amendment, Fourteenth Amendment Equal Protection Clause, and RLUIPA.[1]

**OTHER MATTERS**

Defendants have filed a request for judicial notice of court documents from Robinson I, including the case docket sheet, the judgment, the verdict form, and select excerpts of the jury trial transcript.  It is well established that a court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).  Accordingly, the court will grant defendants' request.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that defendants' request for judicial notice (Doc. No. 24) is granted.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (Doc. No. 23) be granted; and

2. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 2, 2014

DAD:9
robi1776.57

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

---

[1] In light of the undersigned's recommendation that defendants' motion to dismiss this action based on application of the doctrines of res judicata and collateral estoppel be granted, the undersigned declines to address defendants' alternative arguments for dismissal.